# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br>1333 N. Oracle Road<br>Tucson, AZ 85705;<br><br>WESTERN WATERSHEDS PROJECT<br>1415 East Fork Road<br>Clayton, ID 83227;<br><br>WILDEARTH GUARDIANS<br>312 Montezuma Avenue<br>Santa Fe, NM 87501;<br><br>OREGON NATURAL DESERT ASSOCIATION<br>33 NW Irving Avenue<br>Bend, OR 97701;<br><br>GREAT OLD BROADS FOR WILDERNESS<br>605 E. 7th Avenue<br>Durango, CO 81301,<br><br>    Plaintiffs,<br><br> vs.<br><br>U.S. DEPARTMENT OF THE INTERIOR<br>1849 C Street NW<br>Washington, DC 20240;<br><br>U.S. DEPARTMENT OF AGRICULTURE<br>1400 Independence Ave., SW<br>Washington, DC 20250;<br><br>U.S. BUREAU OF LAND MANAGEMENT<br>1849 C Street NW<br>Washington DC 20240;<br><br>U.S. FOREST SERVICE<br>1400 Independence Ave., SW<br>Washington, DC 20250,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

INTRODUCTION

1. Plaintiffs Center for Biological Diversity, Western Watersheds Project, WildEarth Guardians, Oregon Natural Desert Association, and Great Old Broads for Wilderness challenge Defendants' failure to respond to Plaintiffs' November 8, 2005, Petition for rulemaking to amend the U.S. Bureau of Land Management ("BLM") and U.S. Forest Service ("Forest Service") livestock grazing fee regulations. The Administrative Procedure Act ("APA") requires each agency to give interested persons the right to petition for the issuance, amendment, or repeal of a rule. 5 U.S.C. § 553(e). Each agency must proceed to conclude a matter presented to it within a reasonable time. 5 U.S.C. § 555(b); *see also* 5 U.S.C. § 555(e); 43 C.F.R. § 14.1-4; 7 C.F.R. § 1.28. Pursuant to the APA, the reviewing court shall compel agency action unreasonably delayed. 5 U.S.C. § 706(1). Defendants' four and one-half year delay in responding to Plaintiffs' Petition is unreasonable, and Plaintiffs request the Court to compel Defendants to promptly respond.

2. Plaintiffs also challenge Defendants failure to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331, *et seq.*, in establishing and annually determining the livestock grazing fee on public lands managed by the BLM and Forest Service. In promulgating the rules setting forth the grazing fee system in 1988, the BLM and Forest Service prepared "environmental assessments" ("EAs") pursuant to NEPA. As explained in a February 20, 2009, addendum to Plaintiffs' 2005 Petition, Defendants are required to supplement the 1988 EAs due to significant new information and circumstances. *See* 40 C.F.R. § 1502.9(c). Defendants' failure to prepare a supplemental EA or "environmental impact statement" ("EIS") violates NEPA, and Plaintiffs request the Court to compel Defendants to promptly prepare a supplemental NEPA analysis. Moreover, Defendants annually set the grazing fee for public lands managed by the BLM and Forest Service, including on January 29, 2010 for the year 2010, without preparing any analysis of the environmental impacts, in violation of NEPA.

JURISDICTION

3.  Jurisdiction is proper in this Court under 28 U.S.C. § 1331, 5 U.S.C. §§ 551 *et seq.*, and 28 U.S.C. § 1346, because this action involves the United States as a defendant and arises under the laws of the United States, including the APA, 5 U.S.C. §§ 551 *et seq.*, and NEPA, 42 U.S.C. §§ 4321 *et seq.* An actual justiciable controversy exists between Plaintiffs and Defendants. The requested relief is proper under 28 U.S.C. § 2201-02 and 5 U.S.C. § 706. The challenged agency actions and failure to act are subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706.

VENUE

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside and are headquartered in this district.

PARTIES

5.  Plaintiff Center for Biological Diversity is a non-profit corporation with over 250,000 members and online activists. The Center has offices in a number of states, including Arizona, California, Nevada, Alaska, Oregon, Minnesota and Vermont. The Center works to insure the long-term health and viability of animal and plant species across the United States and elsewhere, and to protect the habitat these species need to survive.

6.  Plaintiff Western Watersheds Project is an Idaho non-profit conservation group with offices in Idaho, Utah, Wyoming, Montana, California, and Arizona, and 1400 members throughout the United States. Western Watersheds Project uses administrative proceedings, public education, scientific studies and legal advocacy to promote the restoration of native habitats and protection of wildlife species on public lands in the west.

7.  Plaintiff WildEarth Guardians is a regional conservation organization with a mission to protect and restore wildlife, wildlands and wild rivers in the American West. WildEarth Guardians has long advocated for public lands grazing reform. The organization has

5,000 members, and maintains offices in Santa Fe, New Mexico; Denver, Colorado; and Phoenix, Arizona.

8. Plaintiff Oregon Natural Resources Council ("ONDA") is an Oregon non-profit public interest organization of approximately 1,400 members. It has offices in Bend and Portland, Oregon. ONDA's mission is to protect, defend and restore forever the health of Oregon's native deserts. ONDA actively participates in BLM and Department of the Interior proceedings and decisions concerning the management of public lands in eastern Oregon. ONDA brings this action on its own behalf and on behalf of its members and staff, many of whom regularly enjoy and will continue to enjoy the public lands of eastern Oregon for educational, recreational, spiritual, and scientific activities.

9. Plaintiff Great Old Broads for Wilderness is a national public lands organization, headquartered in Durango, Colorado, that uses the wisdom, energy and activism of elders to protect wilderness and wild lands.

10. Plaintiffs' members regularly use and enjoy the public lands of the western United States, including specific lands and areas that are adversely affected by livestock grazing. Plaintiffs' members use and enjoy these public lands for a variety of purposes including hiking, fishing, hunting, camping, photographing scenery and wildlife, and engaging in other vocational, scientific, and recreational activities. Plaintiffs' members derive recreational, inspirational, religious, scientific, educational, and aesthetic benefit from their activities on these public lands. Plaintiffs' members intend to continue to use and enjoy these public lands frequently and on an ongoing basis in the future, including this summer and fall.

11. The aesthetic, recreational, scientific, educational, religious, and procedural interests of Plaintiffs and their members have been and will continue to be adversely affected by livestock grazing on the public lands managed by the BLM and Forest Service. These are actual, concrete injuries caused by the Defendants' violations of the APA and NEPA. The adverse environmental impacts caused by livestock grazing are well-documented, and include

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    4

adverse affects to soils, stream-side vegetation, watersheds, streams, native plants, aquatic species, and an increase in invasive plant species.  The low and below market value grazing fee imposed by Defendants for the public lands managed by the BLM and Forest Service contributes to the adverse impacts caused by livestock grazing on these public lands for two primary reasons: (1) the below fair market value fee encourages even marginal lands to be grazed on an annual basis, and increases the number of livestock on other areas; and (2) a percentage of the funds collected is required to be used on mitigation and restoration from livestock grazing, and thus a lower fee equates to less funding for environmental mitigation and restoration of affected lands.

12.	Plaintiffs and their members' injuries will be redressed by the relief sought.

13.	Defendant U.S. Department of the Interior is charged with administering public lands at issue in this litigation, including lands managed by the BLM.  Defendant BLM is an agency within the U.S. Department of the Interior.

14.	Defendant U.S. Department of Agriculture is charged with administering public lands at issue in this litigation, including the national forest system.  Defendant Forest Service is an agency within the U.S. Department of Agriculture.

STATUTORY AND REGULATORY BACKGROUND

15.	In 1934, Congress enacted the Taylor Grazing Act, which authorized the Secretary of the Interior to issue grazing permits upon the payment of reasonable fees annually.  43 U.S.C. § 315b.

16.	In 1976, Congress enacted the Federal Land Policy and Management Act, which directed the Secretary of Agriculture and Secretary of the Interior to conduct a study to determine the value of grazing on the lands under their jurisdiction in eleven western states, with a view to establishing a fee to be charged for livestock grazing on such lands which is equitable to the United States and to the holders of grazing permits. 43 U.S.C. § 1751(a).  In making such a study, the Act directed the Secretaries to take into consideration the costs of production normally

associated with livestock grazing in the eleven western states, differences in forage values, and such other factors as may relate to the reasonableness of such fees. *Id*. The Act further directed that "50 per centum or $10,000,000 per annum, whichever is greater of all moneys received by the United States as fees for grazing domestic livestock on public lands under the Taylor Grazing Act . . . . and on lands in National Forests in the sixteen contiguous Western States . . . shall be credited to a separate account in the Treasury, one-half of which is authorized to be appropriated and made available for use in the district, region, or national forest from which such moneys were derived, as the respective Secretary may direct . . . for the purpose of on-the-ground range rehabilitation, protection, and improvements on such lands, and the remaining one-half shall be used for on-the-ground range rehabilitation, protection, and improvements as the Secretary concerned directs." 43 U.S.C. § 1751(b).

17.     In 1978, Congress enacted the Public Rangelands Improvement Act, which states:

> For the grazing years 1979 through 1985, the Secretaries of Agriculture and Interior shall charge the fee for domestic livestock grazing on the public rangelands which Congress finds represents the economic value of the use of the land to the user, and under which Congress finds fair market value for public grazing equals the $1.23 base established by the 1966 Western Livestock Grazing Survey multiplied by the result of the Forage Value Index . . . added to the Combined Index . . . and divided by 100: Provided, That the annual increase or decrease in such fee for any given year shall be limited to not more than plus or minus 25 per centum of the previous years fee.

43 U.S.C. § 1905. The Act made the grazing fee formula effective on a trial basis, from 1979 until the end of 1985. The Act also called for a study to evaluate the performance of the formula and to explore alternative fee systems by 1985. That study, however, was produced too late for deliberation by Congress. Thus the grazing fee formula established in the Public Rangelands Improvement Act expired in 1985 and was not extended by Congress.

18.     In order to establish a fee for the 1988 grazing season and to give Congress adequate time to consider the fee issue, President Reagan signed Executive Order 12548 on February 14, 1986, which directed the Secretaries of Agriculture and Interior to exercise their authority, to the extent permitted by law under the various statutes they administer, to establish

fees for domestic livestock grazing on the public rangelands which annually equals the $1.23 base established by the 1966 Western Livestock Grazing Survey multiplied by the result of the Forage Value Index added to the Combined Index, and divided by 100; provided, that the annual increase or decrease in such fee for any given year shall be limited to not more than plus or minus 25 percent of the previous year's fee, and provided further, that the fee shall not be less than $1.35 per animal unit month.

19. In 1986, the BLM announced that it would continue using the formula provided in the Public Rangelands Improvement Act to set grazing fees, with the qualification that the fee would be not less than $1.35 per animal unit month of forage permitted or leased. This decision was challenged and found unlawful under the notice and comments requirements of the APA and NEPA. *Natural Resources Defense Council v. Hodel*, Civ. No. S-86-0548 EJG (E.D. Cal. 1987). The court found that the agencies had failed to provide a convincing statement of reasons "why the fee formula will not significantly affect the quality of the human environment." *Id*.

20. In 1988, the BLM issued a final rule, pursuant to the APA, concerning the fee determination for the grazing of livestock on public lands managed by the BLM. 53 Fed. Reg. 2984 (Feb. 2, 1988). The rule amended the BLM regulations to provide that the fees for grazing livestock on public lands managed by the BLM for 1988 and subsequent years will be determined by using the lapsed formula from the Public Rangelands Improvement Act, as specified in Executive Order 12548.

21. The BLM prepared an environmental assessment on the final rule pursuant to NEPA, but found that continuing to use the expired Public Rangelands Improvement Act formula "would not alter existing environmental conditions." As concluded by BLM, by "preserving the status quo," the grazing fee formula "should have no environmental consequence."

22. Through use of its grazing fee formula, BLM announced that the grazing fee for 1988 was $1.54 per animal unit month. Since 1988, the federal grazing fee per animal unit

month has fluctuated between a low of $1.35 and a high of $1.98.  The federal grazing fee for 2009 and 2010 was set at $1.35 per animal unit month, which is the minimum allowable fee.

23.     In 1988, the Forest Service issued a final rule, pursuant to the APA, establishing regulations for annually determining fees for livestock grazing on National Forest lands in the 16 western states.  As stated in the rule, "[t]he fee system is the formula prescribed in Executive Order 12548 of February 14, 1986, and, in most respects, is the same grazing fee formula as that enacted by Congress in 1978 under the Public Rangelands Improvement Act."  The Forest Service prepared an environmental assessment pursuant to NEPA, concluding that an environmental impact statement was not required because the environmental impacts of the rule were not significant.

24.     NEPA is our national charter for protection of the environment.  40 C.F.R. § 1500.1(a).  "NEPA was passed by Congress to protect the environment by requiring that federal agencies carefully weigh environmental considerations and consider potential alternatives to the proposed action before the government launches any major federal action."  *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005).  The purpose of NEPA is to ensure "that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts; it also guarantees that the relevant information will be made available to the larger [public] audience that may also play a role in both the decisionmaking process and implementation of that decision."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

25.     "NEPA imposes a procedural requirement that an agency must contemplate the environmental impacts of its actions."  *Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1149 (9th Cir. 1998); *see* 42 U.S.C. § 4332. "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken."  40 C.F.R. § 1500.1(b).

26. NEPA establishes three "categories" of agency action. First, proposals that normally require an EIS should immediately trigger preparation of an EIS. 40 C.F.R. § 1501.4(a)(1). Second, the agency may designate types of actions that normally do not require the preparation of an EIS and can be "categorically excluded." 40 C.F.R. §§ 1508.4, 1501.4(a)(2). If a proposed action fits within a categorical exclusion, NEPA review is not necessary unless "extraordinary circumstances" exist. 40 C.F.R. § 1508.4. Third, any action that does not fall into the first or second category should be evaluated in an EA, which must analyze whether impacts from the proposed action may be significant and, therefore, require an EIS. 40 C.F.R. §§ 1501.4(b), 1508.9.

27. NEPA imposes a continuing obligation on federal agencies to supplement EAs and EISs. A supplemental NEPA analysis is required if the agency makes substantial changes to the action that are relevant to environmental concerns, or if there are significant new circumstances or information relevant to environmental concerns and bearing on the action or its impacts. 40 C.F.R. § 1502.9(c).

## FACTUAL BACKGROUND

28. Livestock grazing is the most widespread land management practice on public lands in the western United States, with approximately 260 million acres of public lands managed by the BLM and Forest Service in the forty-eight contiguous states used for grazing livestock.

29. Approximately 22,000 ranchers graze livestock on public lands managed by the BLM and Forest Service. The permits for the 2000 largest permit holders account for approximately two-thirds of all the livestock grazing on these public lands.

30. Livestock grazing on federal public lands provides only about 3 percent of the beef produced in the United States.

31. The environmental impacts of livestock grazing on public lands managed by the BLM and Forest Service include, but are not limited to, reduced tree and plant cover, reduced native species diversity, wider stream channels, unstable stream banks, higher peak water flows,

reduced soil fertility, increased erosion, high water temperatures, increased sedimentation and nutrients in streams, and adverse impacts to riparian and aquatic species.

32. Livestock grazing has long-term adverse impacts on watersheds, including the trampling and loss of stabilizing vegetation from stream banks, channel scouring, and erosion.

33. Livestock grazing has long-term adverse impacts on upland areas, including soil erosion and compaction, and the destruction of stabilizing microbiological soil crusts.

34. Eroding soil and manure associated with livestock grazing on public lands often ends up in streams, increasing sediment load, excessive nutrients, and pathogen contamination.

35. Vegetation in the west has been significantly impacted by livestock grazing on public lands, including broad-scale impacts to native grasslands and sage brush habitat.

36. Livestock grazing is identified as a factor in the listing of numerous species on public lands managed by the BLM and Forest Service as threatened or endangered under the Endangered Species Act.

37. A typical grass-fed cow produces 600-700 liters of methane per day. This equates to approximately 175,663,860 kg of methane per year for all cattle grazed on public lands managed by the BLM and Forest Service. Methane is a greenhouse gas like carbon dioxide. The effect on the climate from methane is 23 times higher than the effect of carbon dioxide. The release of methane released annually by cattle grazing on public lands managed by the BLM and Forest Service is equivalent to the carbon dioxide emissions from 705,342 passenger vehicles, or 8,578,933 barrels of oil consumed.

38. In 1991, the United States General Accounting Office ("GAO") issued a report on rangeland management entitled "Current Formula Keeps Grazing Fees Low." The GAO found that while the grazing fee formula meets the objective of promoting the economic stability of western livestock grazing operators by keeping grazing fees low, the formula does not achieve the objective of recovering reasonable program costs, and does not meet the objective of providing a revenue base that can be used to better manage and improve federal lands so that

they will remain a productive public resource in the future.

39. According to the 1991 GAO report, the grazing fee formula used by BLM and the Forest Service serves to suppress increases in the grazing fee over time by relying on "ability-to-pay" factors twice in its mathematical design. As a result, in 1991, the federal grazing fee was 15 percent lower than it was in 1981. By contrast, there was a 17-percent increase in private grazing land lease rates over this same period.

40. GAO concluded in 1991 that the grazing fee formula used by the BLM and Forest Service (1) has not followed the rise in grazing land lease rates paid by operators on private lands; (2) does not cover the government's costs of managing the grazing program; and (3) does not provide funding for an adequate level of resource protection.

41. According to a 1992 study prepared for Congress by the Secretaries of Interior and Agriculture, market values of private rangeland at that time ranges from $4.68 to $10.26 per animal unit month while the cost to the U.S. Treasury of providing public lands grazing in fiscal year 1990 was between $2.40 and $3.24 per animal unit month on lands managed by the Forest Service and between $2.18 and $3.21 for lands managed by BLM. In contrast, the grazing fee established by Defendants for 1990 was $1.97 per animal unit month.

42. In 2005, the GAO issued a report on livestock grazing entitled "Federal Expenditures Vary, Depending on the Agency and the Purpose of the Fee Charged." GAO found that the grazing fee that the BLM and Forest Service charge, which was $1.43 per animal unit month in 2004, is generally much lower than the fees charged by the other federal agencies, states, and private ranchers. The BLM and Forest Service grazing fee decreased by 40 percent from 1980 to 2004, while grazing fees charged by private ranchers increased by 78 percent for the same period. If the purpose of the grazing fee was to recover expenditures, the BLM and Forest Service would have had to charge $7.64 and $12.26 per animal unit month, respectively.

43. The grazing fees received by the BLM and Forest Service reimburse only a portion of the agencies' costs in administering their grazing program.

44. A percentage of grazing fees collected by the BLM and Forest Service are deposited into a range improvement fund, which are used for range improvements and to mitigate some of the adverse affects caused by livestock grazing.

45. On November, 8, 2005, Plaintiffs submitted a 43-page Petition to the Secretaries of Agriculture and the Interior, pursuant to the APA ("2005 Petition"). Plaintiffs' 2005 Petition requested the Secretaries to initiate rulemaking to amend the grazing fee regulations, pursuant to the APA, to establish a fair and just fee for livestock grazing on certain federal lands in the sixteen western states. It included specific recommendations for regulatory changes to the grazing fee for public lands managed by the BLM and Forest Service, and requested Defendants to develop new grazing fee regulations that ensure that the Forest Service and BLM grazing programs are self-sustaining, will recover the full cost of the federal grazing program, including costs to the Forest Service and BLM, and to base the grazing fee on the market price.

46. Defendants have not responded to the 2005 Petition.

47. On February 20, 2009, Plaintiffs submitted an addendum to the 2005 Petition, in order to clarify Plaintiffs position that the 1988 rulemaking failed to comply with NEPA, and that the agencies must reconsider the 1988 environmental assessments in light of subsequent developments and new information. Plaintiffs' addendum also made clear that due to the years of delay by the Secretaries in responding to the 2005 Petition, and the fact that NEPA places the responsibility on federal agencies to continuously assess new information and changed circumstances, the addendum provides no excuse for any additional delay in the Secretaries' long overdue response to the 2005 Petition.

48. Significant new information since 1988 includes, but is not limited to, the 1991 and 2005 GAO reports; the environmental impact statement that was prepared for rangeland reform proposals in 1994; the continued decline in federal rangelands and the species that depend on these lands; numerous listings of threatened and endangered species and critical habitat adversely affected by livestock grazing on BLM and Forest Service lands; and the persistent drought-like

conditions in substantial portions of the west and other impacts caused by or related to global climate change.

49. In April, 2009, the U.S. Department of Agriculture sent a letter to Petitioners, apologizing for the delayed response, stating that this issue was considered in the previous administration, and stating that the Forest Service has been asked to review the petition and recommend a course of action.

50. In May, 2009, the U.S. Department of Interior sent a letter to Petitioners, stating that the 2005 Petition was considered in the previous administration, but not resolved, and that the Department would work on the Petition.

51. On January 29, 2010, the BLM and Forest Service announced that the federal grazing fee for 2010 will be $1.35 per animal unit month for public lands managed by the BLM and Forest Service. The BLM and Forest Service did not prepare an environmental analysis, pursuant to NEPA, prior to making the January 29, 2010 announcement.

52. In September, 2009, Petitioners were informed by BLM that the agency hoped to have a reply to Petitioners, regarding the 2005 Petition, by the end of September.

53. In the spring of 2010, without any explanation, Petitioners were informed by BLM that any response to the 2005 Petition was a very low priority.

54. Defendants have not prepared any supplemental NEPA analysis concerning the grazing fee formula for lands managed by the BLM and Forest Service since completion of the 1988 environmental assessments.

## FIRST CLAIM FOR RELIEF

<u>Defendants' Failure to Respond to Plaintiffs' 2005 Petition Violates the APA</u>

55. Plaintiffs hereby incorporate by reference all preceding paragraphs.

56. The APA requires agencies to give interested persons the right to petition for the issuance, amendment, or repeal of a rule. 5 U.S.C. § 553(e). Agencies are required to conclude matters presented to the agency within a reasonable time. 5 U.S.C. § 555(b).

57. United States Department of Interior regulations state that any person may petition for the issuance, amendment, or repeal of a rule pursuant to the APA, 5 U.S.C. § 553(e), and that the petition "will be given prompt consideration and the petition will be notified promptly of action taken." 43 C.F.R. § 14.1-4.

58. United States Department of Agriculture regulations state that any petition for the issuance, amendment, or repeal of a rule pursuant to the APA, 5 U.S.C. § 553(e) "will be given prompt consideration and petitioners will be notified promptly of the disposition made of their petitions." 7 C.F.R. § 1.28.

59. Plaintiffs submitted a Petition for rulemaking to Defendants on November 8, 2005. Defendants have not responded to, considered, or concluded resolution of Plaintiffs' Petition. Defendants have not notified Plaintiffs of action taken pursuant to Plaintiffs' Petition.

60. Defendants failure to respond to Plaintiffs' Petition violates the APA and applicable regulations. 5 U.S.C. § 553(e); 5 U.S.C. § 555(b); 43 C.F.R. § 14.1-4; 7 C.F.R. § 1.28.

61. Defendants' four and one-half year delay in responding to Plaintiffs' Petition is unreasonable under the APA and applicable regulations. 5 U.S.C. § 706(1); 5 U.S.C. § 555(b); 43 C.F.R. § 14.1-4; 7 C.F.R. § 1.28.

SECOND CLAIM FOR RELIEF

<u>Defendants Have Violated NEPA by Failing to Supplement EAs Prepared in 1988, and by Failing to Prepare NEPA Analysis Prior to Annually Setting the Grazing Fee for Public Lands</u>

62. Plaintiffs hereby incorporate by reference all preceding paragraphs.

63. In promulgating the rules setting forth the grazing fee system in 1988, the BLM and Forest Service prepared EAs pursuant to NEPA.

64. There has been significant new information and circumstances relevant to the livestock grazing on lands managed by the BLM and the Forest Service since 1988, including significant new information and circumstances relevant to the grazing fee established for these public lands.

65. Defendants ongoing failure to supplement the EAs prepared in 1988 violates NEPA. 40 C.F.R. § 1502.9(c). Defendants ongoing failure to supplement the 1988 EAs should be found to be agency action unlawfully withheld and unreasonably delayed, and/or found to be arbitrary, capricious, not in accordance with law, and without observance of procedure required by law. 5 U.S.C. § 706.

66. Defendants failure to prepare any NEPA analysis prior to annually setting the grazing fee for public lands managed by the BLM and Forest Service, including on January 29, 2010 for the year 2010, violates NEPA. Defendants' failure to prepare any NEPA analysis prior to establishing the 2010 grazing fee should be found to be agency action unlawfully withheld and unreasonably delayed, and/or found to be arbitrary, capricious, not in accordance with law, and without observance of procedure required by law. 5 U.S.C. § 706.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendants have violated the APA and applicable regulations by failing to respond to Plaintiffs' 2005 Petition within a reasonable time.

B. Compel Defendants to respond to Plaintiffs' 2005 Petition within 90 days of this Court's order.

C. Declare that Defendants have violated NEPA by failing to supplement the EAs prepared in 1988 regarding the grazing fee for lands managed by the BLM and the Forest Service, and by failing to prepare NEPA analysis prior to setting the annual grazing fee for lands managed by the BLM and Forest Service.

D. Compel Defendants to prepare a supplemental EA or EIS concerning the grazing fee for lands managed by the BLM and the Forest Service.

E. Compel Defendants to prepare NEPA analysis concerning the 2010 grazing fee for lands managed by the BLM and the Forest Service.

F.      Award to Plaintiffs their costs, expenses, expert witness fees, and reasonable attorney fees pursuant to applicable law including the Equal Access to Justice Act, 28 U.S.C. § 2412; and

G.      Grant Plaintiffs such further relief as may be just, proper, and equitable.

Dated this Fourth day of June, 2010.     Respectfully submitted,

_____
Matt Kenna (Bar #CO0028)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, Colorado 81301
Tel: 970-385-6941
matt@kenna.net

Attorney for Plaintiffs